ORDERED.

**Dated:  February 25, 2016**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| FEDERICO AUGUSTO MONTALVO, | ) | Case No. 6:10-bk-08338-KSJ |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

### MEMORANDUM OPINION DENYING DEBTOR'S
### MOTION FOR SANCTIONS AND GRANTING DECLARATORY RELIEF

Debtor previously owned two condominiums requiring him to pay periodic assessments to the Villa Medici's Condominium Association (the "Association"). Debtor stopped paying these assessments, filed a Chapter 13 bankruptcy case, and surrendered his interest in the condominiums. The Association, through a receiver, then collected rents on the surrendered condominiums and applied the monies to the oldest assessments due, all pre-petition. Debtor now seeks sanctions[1] against the Association making two arguments—that the Association violated the discharge injunction and the automatic stay, first, by applying the collected rents to discharged pre-petition assessments and, second, by attempting to collect "discharged" post-petition assessments he has no liability to pay. Because the Debtor's liability to the Association arises from a covenant running with the land as opposed to a contractual obligation, the Court

---

[1] Doc. No. 59.  The Association filed two responses.  Doc. Nos. 60 and 64.

rejects the Debtor's arguments finding that the Association did not violated neither the discharge injunction nor the automatic stay and that the Debtor remains liable for all post-petition assessments until legal title to the condominiums transferred to a third party.  Debtor's motion for sanctions is denied.

When Debtor, Federico Montalvo, filed his Chapter 13 petition,[2] he owned two condominium units at Residences at Villa Medici.[3] Debtor did not reside in either unit and surrendered his interest in both units during his bankruptcy case.[4] Both units were subject to mortgages[5] and to a Declaration of Condominium.[6] Debtor listed the Association twice on his schedules as a secured creditor valuing its claims as $0.00 or unknown.[7] The Association filed no claim in the case.

The Court confirmed Debtor's Second Amended Chapter 13 Plan[8] that provided "[t]he debtor is responsible for paying all post-petition ongoing homeowners assessments, homeowners' dues, and/or property taxes; the automatic stay shall not apply to these debts."[9] The Association however received *no* payments from the Debtor either under the confirmed plan or *outside* of his Chapter 13 case.  Debtor essentially just stopped paying all assessments due or accruing to the Association.  Debtor made all payments due to his other creditors under his Chapter 13 Plan and later received his discharge.[10] The Discharge Order provided "a creditor

---

[2] Doc. No. 1. Debtor filed his petition on May 14, 2010.

[3] Doc. No. 1, P. 8.

[4] *Id.*

[5] Unit 28's mortgage was with CitiMortgage, Inc. CitiMortgage moved for relief from the automatic stay on April 5, 2011. (Doc. No. 33). The Court granted CitiMortgage's motion on April 29, 2011, allowing CitiMortgage to obtain an *in rem* judgment against the property. (Doc. No. 35). Unit 27's mortgage was with Ocwen Loan Servicing, LLC. Ocwen moved for relief from the automatic stay on September 26, 2011. (Doc. No. 42). The Court granted Ocwen's motion on November 22, 2011, allowing Ocwen to obtain an *in rem* judgment against the property. (Doc. No. 45).

[6] Doc. No. 60-4. The Declaration was recorded in the official records for Orange County on February 27, 2006. On January 11, 2007, the original Declaration was amended only to reflect the current neighborhood name "Residences at Villa Medici."

[7] Doc. No. 1, P. 16.

[8] Doc. Nos. 25 and. 30. The Court confirmed the Second Amended Chapter 13 Plan on February 11, 2011.

[9] Doc. No. 30, ¶ 14.

[10] Doc. No. 40. Debtor received his discharge on September 16, 2011.

may have the right to enforce a valid lien . . . against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."[11]

Because many unit owners in the Villa Medici neighborhood also were not paying condominium assessments, the Association convinced the state court to appoint a receiver to rent empty units and use the collected rent monies to pay outstanding assessments associated with each unit.[12] The receiver rented at least one of Debtor's units and collected $9,290.39.[13] The Association then applied the monies to the fees owed on the unit—the fees due before the Debtor filed bankruptcy totaling $2,474.81.[14]

Debtor later reopened this case[15] and seeks sanctions against the Association. Debtor argues that the Association violated the automatic stay and the discharge injunction by applying the rent monies to the pre-petition assessments and that he has no liability for post-petition assessments because the fees "emanate" from a pre-petition contract between the Association and the Debtor.[16] The Association responds[17] that it did not violate the automatic stay or the discharge injunction by applying the rent monies to the pre-petition assessments because it was only taking *in rem* action against the property and was not collecting a debt against the Debtor. The Association also argues the Debtor is liable for post-petition assessments because the confirmation order directs the Debtor to pay the fees, which he failed to pay, and the Declaration creates a covenant that runs with the land unaffected by the Debtor's bankruptcy or his discharge.[18]

---

[11] Doc. No. 40.

[12] Doc. No. 60-3, ¶¶ 35-40. Case No. 2009-CA-37092-O, Div. No. 35 in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.  The state court appointed the receiver on December 9, 2009.

[13] Doc. No. 59, ¶¶ 79-82.

[14] These prepetition assessments included past due condominium fees, attorney's fees, late fees, and interest. Doc. No. 59, ¶¶ 79-82.

[15] Doc. Nos. 49, 55. The Court reopened the case on September 1, 2015.

[16] Doc. No. 59. The Debtor filed his motion on September 18, 2015.

[17] Doc. No. 60. The Association responded on October 16, 2015.

[18] The Court heard oral argument on November 10, 2015 and took this matter under advisement. The Association filed a notice of supplemental authority on December 23, 2015. Doc. No. 64.

The Declaration supports the position of the Association and provides "[t]he Association is hereby granted a lien on each Unit, which lien shall secure the payment of all assessments, interests thereon, and reasonable attorneys' fees incurred as an incident to the enforcement of said lien. . . . The lien shall be effective, have priority and be collected as provided by the Act."[19] The "Act" is defined as "the Condominium Act of the State of Florida in effect on the date of recordation of this Declaration of Condominium."[20] The Condominium Act[21], in turn, provides "[t]he association has a lien on each condominium parcel to secure the payment of assessments."[22] The Declaration similarly provides "[a]ll of the restrictions, reservations, covenants, conditions and easements contained herein shall constitute covenants running with the land."[23] The Declaration then provides "[l]iability for assessments may not be avoided by abandonment of a Unit."[24]

The legal issue is whether the obligations created by this Declaration "run with the land" and are non-dischargeable liens secured by the real property or, instead, mere contractual obligations between an association and a real property owner.  Looking to Florida law, I hold that the Association's assessments are covenants running with the land.  They remain enforceable liens post-discharge until liability shifts to a new property owner upon a formal transfer of title to the land.

"'Property interests are created and defined by state law.'"[25] The Court therefore must look to Florida property law to analyze the Declaration's legal effect. The Florida Supreme Court stated "[c]ovenants are loosely defined as 'promises in conveyances or other instruments

---

[19] Doc. No. 60-4, Sec. XIII, ¶ K.
[20] Doc. No. 60-4, Sec. II, ¶ A.
[21] The version of the Condominium Act effective on the date the Declaration was recorded in 2006 also includes this quoted language.
[22] Fla. Stat. § 718.116.
[23] Doc. No. 60-4, Sec. I.
[24] Doc. No. 60-4, Sec. XIII, ¶ I.
[25] *In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004) (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed. 2d 136 (1979)).

pertaining to real estate.'"[26] The Florida Supreme Court also cited a Florida District Court of Appeal for a definition of covenants running with the land:

> 'A covenant running with the land differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted. If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land.'[27]

"The declaration, which some courts have referred to as the condominium's 'constitution,' strictly governs the relationships among the condominium unit owners and the condominium association."[28] Indeed, "[a] declaration of a condominium is *more than a mere contract* spelling out mutual rights and obligations of the parties thereto-it assumes some of the attributes of a covenant running with the land, circumscribing the extent and limits of the enjoyment and use of real property."[29] The Condominium Act similarly provides "[t]he declaration…may include covenants and restrictions concerning the use, occupancy, and transfer of the units"[30] and "[a]ll provisions of the declaration…run with the land, and are effective until the condominium is terminated."[31] Under Florida law, obligations imposed by declarations encumbering real property are more akin to covenants running with the land than contractual obligations detached and separate from real property ownership.

---

[26] *Palm Beach Cnty. v. Cove Club Investors Ltd.*, 734 So. 2d 379, 391 n.4 (Fla. 1999) (quoting 19 Fla. Jur. 2d Deeds § 168 (1998)).  See also, *Cohn v. Grand Condo. Ass'n Inc.,* 62 So.3d 1120, 1121 (Fla. 2011).

[27] *Palm Beach Cnty.*, 734 So. 2d at 391 n.4 (quoting *Maule Indus., Inc. v. Sheffield Steel Prods., Inc.*, 105 So. 2d 798, 801 (Fla. Dist. Ct. App. 1958)).

[28] *Woodside Vill. Condo. Ass'n, Inc. v. Jahren*, 806 So. 2d 452, 456 (Fla. 2002) (citing *Schmidt v. Sherrill*, 442 So. 2d 963, 965 (Fla. Dist. Ct. App. 1983)).

[29] *Woodside Vill. Condo.*, 806 So. 2d at 456 (quoting *Pepe v. Whispering Sands Condo. Ass'n, Inc.*, 351 So. 2d 755, 757 (Fla. Dist. Ct. App. 1977)) (internal quotation marks omitted) (emphasis supplied).

[30] Fla. Stat. § 718.104(5).

[31] Fla. Stat. § 718.104(7).

Granted, courts in other jurisdictions are split on whether post-petition assessments are

dischargeable in bankruptcy.[32] As Judge Briskman explained noting three approaches to the

issue:

> One line[33] of authority has held post-petition assessments nondischargeable
> because the obligation to pay assessments arises from a covenant running with the
> land. A second line[34] of authority has held that post-petition assessments are
> dischargeable because they arose from a prepetition contract. A third line[35] has

---

[32] *See, e.g., Foster v. Double R Ranch Ass'n (In re Foster)*, 435 B.R. 650, 659-61 (B.A.P. 9th Cir. 2010) (referring to a homeowner's association declaration as a "'document that unilaterally creates a type of real property'" and holding "under Washington law and the Declaration, debtor's obligation to pay the HOA dues was a function of owning the land with which the covenant runs and not from a prepetition contractual obligation"); *In re Coonfield*, 517 B.R. 239, 242 (Bankr. E.D. Wash. 2014) ("In cases such as this one, where chapter 13 debtors have surrendered all interests in a condominium but still hold bare legal title, courts are split on whether ongoing assessments are dischargeable under 11 U.S.C. § 1328(a). Those courts that comport with the Homeowners Association's view assert that assessments are a result of covenants running with the land and conclude that ongoing assessments are non-dischargeable. In contrast, other courts view the obligations as flowing from contract and conclude that they are dischargeable. While both approaches establish the existence of an obligation, neither appropriately addresses whether such obligations are dischargeable."); *Liberty Cmty. Mgmt., Inc. v. Hall (In re Hall)*, 454 B.R. 230, 236-38 (Bankr. N.D. Ga. 2011) (concluding that the "assessment obligation" of condominium declaration is a covenant that runs with the land under Georgia law and discussing the "split of authority in the circuit and bankruptcy courts concerning whether post-petition assessments are claims within the meaning of section 101(5)"); *In re Colon*, 465 B.R. 657, 663 (Bankr. D. Utah 2011) ("The Debtors are not enjoying the benefits of the HOA and to hold Debtors liable for post-petition HOA dues when they no longer live at the Property and indeed have surrendered the Property to the secured lienholder is not only inequitable, but in contrast to the plain language of § 1328(a). . . .The Court does not address the issue of whether [the Declaration of Covenants, Conditions, and Restrictions] run with the land under Utah state law. Despite the fact that the Debtors are listed on the title to the property, the Court finds that the Debtors have no consequential interest in the Property that measure up to rights to exercise ownership interests and control. Because the Court finds that post-petition HOA assessments are dischargeable under § 1328(a), [the HOA] cannot pursue the Debtors for collection of those assessments.").

[33] *See, e.g., River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994); *In re Foster*, 455 B.R. 650; *Otter Creek Homeowners Ass'n v. Davenport (In re Davenport)*, 534 B.R. 1 (E.D. Ark. 2015); In *re Hall*, 454 B.R. 230; *Maple Forest Condo. Ass'n v. Spencer (In re Spencer)*, 457 B.R. 601 (Bankr. E.D. Mich. 2011); *Old Bridge Estates Cmty Ass'n, Inc. v. Lozada (In re Lozada)*, 214 B.R. 558 (Bankr. E.D. Va. 1997) *aff'd* 176 F.3d 475 (4th Cir.1999); *In re Whitten*, 192 B.R. 10 (Bankr. D. Mass. 1996); *In re Dalton*, 183 B.R. 127 (Bankr. S.D. Tex. 1995*); Beeter v. Tri–City Prop. Mgmt. Servs., Inc. (In re Beeter)*, 173 B.R. 108 (Bankr. W.D. Tex. 1994); *In re Gonzalo*, 169 B.R. 13 (Bankr. E.D.N.Y. 1994); *In re O'Mara*, 141 B.R. 237 (Bankr. M.D. Fla. 1992); *In re Raymond*, 129 B.R. 354 (Bankr. S.D.N.Y. 1991); *Hill v. Windward Hills Cond. Ass'n (In re Hill)*, 100 B.R. 907 (Bankr. N.D. Ohio 1989); *In re Case*, 91 B.R. 102 (Bankr. D. Colo. 1988); *In re Lenz*, 90 B.R. 458 (Bankr. D. Colo. 1988); *In re Harvey*, 88 B.R. 860 (Bankr. N.D. Ill. 1988); *Rink v. Timbers Homeowners Ass'n I, Inc.*, 87 B.R. 653 (Bankr. D. Colo. 1987); *Horton v. Beaumont Place Homeowners Ass'n, Inc. (In re Horton)*, 87 B.R. 650 (Bankr. D. Colo. 1987); *Alexandria Knolls West Condo. Homes Council of Co-Owners v. Strelsky (In re Strelsky)*, 46 B.R. 178 (Bankr. E.D. Va. 1985).

[34] *See, e.g., Matter of Rosteck*, 899 F.2d 694 (7th Cir.1990); *In re Elias*, 98 B.R. 332 (N.D. Ill. 1989); *In re Hawk*, 314 B.R. 312 (Bankr. D.N.J. 2004); *Stone v. Rubidell Resort Condo. (In re Stone)*, 243 B.R. 40 (Bankr. W.D. Wisc. 1999); *In re Mattera*, 203 B.R. 565 (Bankr. D.N.J. 1997); *In re Lamb*, 171 B.R. 52 (Bankr. N.D. Ohio 1994); *Affeldt v. Westbrooke Condominium Ass'n (In re Affeldt)*, 164 B.R. 628 (Bankr. D. Minn. 1994), *aff'd*, 60 F.3d 1292 (8th Cir.1995); *Hodge v. Burke Townhouse Homeowners Ass'n (In re Hodge)*, Nos. 90–10275–AT, 90–10391–AT, 1992 WL 613691 (Bankr. E.D. Va. June 30, 1992); *Cohen v. N. Park Parkside Cmty Ass'n (In re Cohen)*, 122 B.R. 755 (Bankr. S.D. Cal. 1991); *Behrens v. Woodhaven Ass'n*, 87 B.R. 971 (Bankr. N.D. Ill. 1988).

[35] *See, e.g., Matter of Pratola*, 152 B.R. 874 (Bankr. D.N.J. 1993); *In re Miller*, 125 B.R. 441 (Bankr. W.D. Pa. 1991); *In re Ryan*, 100 B.R. 411 (Bankr. N.D. Ill. 1989); *In re Montoya*, 95 B.R. 511 (Bankr. S.D. Ohio 1988).

taken a compromise position that post-petition assessments are dischargeable unless the debtor resided in or leased the unit.[36]

Judge Briskman explained "[i]n 1994, Congress attempted to resolve this split of authority by enacting Bankruptcy Code Section 523(a)(16)"[37] However, 523(a)(16) does not apply to Chapter 13 discharges,[38] and "[t]he discharge does not affect a secured creditor's interest in real property." So, the contrasting conclusions in the three approaches remain relevant.

This Court agrees with Judge Briskman and the *Rosenfeld* line of cases that "[t]he obligation to pay homeowners' association assessments is based on a covenant running with the land, a property right. Generally, the discharge does not modify property rights."[39] The Declaration here outlines the unit owner's responsibility for assessments and this responsibility, under Florida law, and is a covenant that runs with the land.

---

[36] *In re Rivera*, 256 B.R. 828, 831 (Bankr. M.D. Fla. 2000) (collecting cases, citations repositioned). The line of cases stem from two circuit court decisions—*River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994) and *Matter of Rosteck*, 899 F.2d 694 (7th Cir. 1990). Both of these cases involved Chapter 7 debtors. The *Rosenfeld* court noted "[u]nder the Declaration, the obligation to pay assessments is a function of owning the land with which the covenant runs. Thus, Rosenfeld's obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation." 23 F.3d at 837. Similar to the Debtor in this case, the Debtor in *Rosenfeld* "claimed he intended to abandon all interest in the unit . . . [and] asserted no ownership interest in the unit . . . . [The Debtor was] still the record title owner." *Id.* at 835. The *Rosteck* court, in contrast, wrote "the assessments arose out of a pre-petition contract and were therefore a pre-petition debt. The bankruptcy court and, ultimately, the district court, both held that the post-petition condominium assessments were pre-petition debt, and therefore dischargeable. We agree." 899 F.2d at 696.
[37] 256 B.R. at 832.
[38] *In re Foster*, 435 B.R. at 658 ("Section 523(a)(16) is inapplicable to the discharge under § 1328(a)"); *In re Khan*, 504 B.R. 409, 412 (Bankr. D. Md. 2014), as corrected (Jan. 30, 2014) ("Because 11 U.S.C. § 523(a)(16) is not specifically listed among the exceptions to a Chapter 13 discharge entered after completion of all of a debtor's payments under Chapter 13 plan, the *in personam* obligation to pay condominium fees does not survive as an exception to discharge. But, this obligation survives discharge as an *in rem* obligation because it is a covenant running with the land. If it were otherwise, a debtor could continue to live in a unit after completion of a Chapter 13 plan in perpetuity without the obligation to pay the same fees that neighbors must pay."); *In re Colon*, 465 B.R. at 662 ("[A]ccording to the plain language of § 523(a), § 523 does not apply to discharges granted under § 1328(a)."); *In re Danastorg*, 382 B.R. 585, 588 (Bankr. D. Mass. 2008) ("Section 1328 does not mention section 523(a)(16), and the Court finds that section 523(a)(16) is inapplicable to Chapter 13 cases, where the Debtor has an ongoing duty to pay post-petition obligations, such as utilities and condominium fees, as they come due.").
[39] *In re Rivera*, 256 B.R. at 831. The Court notes that *Rivera* was a Chapter 7 case but the analysis concerning declarations as creating covenants that run with the land still applies.

The Debtor urges this Court to treat the Association's Declaration as a pre-petition contract between the Debtor and the Association, and to follow the reasoning of non-Florida courts.[40] The Court rejects this interpretation.

Concluding that the Declaration here creates a covenant that runs with the land, the Debtor fails on both of his arguments.  He is responsible for all accruing post-petition assessments unless title to the real property transfers.  And, the Association did not violate the automatic stay or the discharge injunction by applying rent monies to its pre-petition lien.

The Debtor is responsible for *post-petition* assessments on the property until a transfer of title occurs. Debtor admittedly *is* relieved of any *in personam* liability that arose *pre-petition* once a discharge issues.[41]  But, assessments will continue to accrue *after* the bankruptcy is filed, and the discharge will not relieve the Debtor of these post-petition *in personam* liabilities. Debtor remains personally liable for the post-petition assessments because the obligation runs with the land from the time of his discharge until title to the real property transfers.

Debtor's surrender of the units is irrelevant. Debtor was the record owner of the units until the title transferred. "'Surrender' does not require the debtor to turn over physical possession of the collateral; the Bankruptcy Code uses the word 'deliver' when it intends physical turnover of property. Moreover, construing 'surrender' to require the debtor to deliver property to the secured creditor would circumvent state law obligations by allowing the secured creditor to bypass state foreclosure requirements. 'Surrender' is not equivalent to 'foreclosure.'"[42] "[A] mortgagee has no right to possession until transfer at a foreclosure sale. So, the mortgagor continues to legally own the property after default until a foreclosure or

---

[40] Only one Florida bankruptcy court has accepted the "contractual" argument. *In re Wasp*, 137 B.R. 71 (M.D. Fla. 1992)(Judge Baynes).  I do not find this dated minority opinion persuasive.

[41] The Association never sought to collect pre-petition assessments from the Debtor after he filed this bankruptcy case.  They filed no proof of claim and requested no monies from the Chapter 13 Trustee.  Instead, they looked to their enforceable *in rem* remedies against the real property by collecting rent on the unit and applying it to pay the pre-petition assessments.

[42] *In re Plummer*, 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014) (internal citations omitted).

otherwise valid transfer of title occurs. A debtor's indication of intent to surrender real property does not change this. [Again,] '[p]roperty interests are created and defined by state law.'"[43] It is the unit owner's obligation to pay assessments associated with the unit—this obligation is provided for in the Declaration and by statute.[44] The unit owner remains liable for the assessments until he or she is no longer the record owner.[45] Therefore, the Debtor is liable for the post-petition assessments,[46] and the debt is not discharged.

And, the Association did not violate the automatic stay or the discharge injunction by applying collected rents to unpaid pre-petition assessments.  The Declaration and the statute support the existence of a lien on the property for unpaid assessments—including pre-petition assessments. When the Association applied the collected rent monies to the prepetition assessments due, it did not violate the discharge injunction or the automatic stay. The Association did nothing to collect the monies personally from the Debtor.[47] And it is within the Association's rights—as provided by the Act, the state court receivership program, and the Declaration—to apply the monies it collected against the prepetition amount owed. Those assessments were a lien against the unit that arose from a covenant that runs with the land. The

---

[43] *In re Plummer*, 513 B.R. at 145 (internal citations omitted).

[44] *In re Rosenfeld*, 23 F.3d at 837 ("The post-petition assessments were for the upkeep of common areas and other common expenses during [the Debtor's] post-petition ownership."); *In re Hall*, 454 B.R. at 236 ("The Declaration states that it is the unit owner's obligation to pay assessments, which are levied against the unit, not the individual. The individual is liable for assessments based on ownership of the unit, which is subject to the covenant to pay assessments."). *See also* Fla. Stat. § 718.116(1)(a) ("A unit owner, regardless of how his or her title has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure, is liable for all assessments which come due while he or she is the unit owner."); Doc. No. 60-4, Sec. XIII, ¶ C ("Each unit owner shall be responsible for the payment of the assessments imposed against the unit owner's Unit in an amount equal to the percentage of responsibility for payment of common expenses set forth in Exhibit 'C' attached hereto.").

[45] *Batali v. Mira Owners Ass'n (In re Batali)*, No. BAP WW-14-1557-KIFJU, 2015 WL 7758330, at *9 (B.A.P. 9th Cir. Dec. 1, 2015) ("*Foster* holds that the nondischargeable liability continues to accrue 'as long as [the debtor] maintains his legal, equitable **or** possessory interest in the property....' While the Debtors had given up possession of the Kirkland Condominium, they had not divested themselves of their legal and equitable ownership interests in it. As the bankruptcy court correctly noted, surrender under the plan '[did] not effectuate a transfer of the property.') (emphasis and alterations supplied in *Batali*) (internal citations omitted).

[46] Indeed, the Debtor's confirmed Chapter 13 Plan required him to pay all accruing post-petition assessments, which he failed to do.

[47] The receivership program provided that the receiver could use the rent monies to satisfy the assessments owed on the units. Specifically, Doc. No. 60-3, ¶ 35G provides "[t]he Receiver shall use the sequestered funds that are collected to pay the assessment payments associated with each respective unit." The "sequestered funds" includes those funds collected from renting the units—both units that already had a tenant and those that were vacant. Doc. No. 60-3, ¶¶ 35A, B, and C.

Association need not file a claim of lien or a claim in this bankruptcy case to collect these amounts.

Debtors' Motion for Sanctions is denied. The Association may pursue collection of unpaid post-petition assessments against the Debtor in state court or any other appropriate forum without violating the automatic stay or any discharge injunction. A separate order consistent with this Memorandum Opinion shall be entered.

###

Attorney Lawrence Kosto is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of this order.